**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FARM BUREAU FEDERATION, et al., | Case No. 1:25-CV-00947-SLS |
| *Plaintiffs*, | |
| v. | |
| UNITED STATES FISH AND WILDLIFE SERVICE, et al., | |
| *Defendants*, | |
| and | |
| CENTER FOR BIOLOGICAL DIVERSIY, WILDEARTH GUARDIANS, SIERRA CLUB, and DEFENDERS OF WILDLIFE, | |
| *Defendant-Intervenor-Applicants*. | |

**DECLARATION OF LINDSAY LARRIS**

I, Lindsay Larris, declare as follows:

1.      My name is Lindsay Larris. I am over the age of 18 and competent to testify. The information in this declaration is based on my personal experience and my review of publicly available information. If called as a witness in these proceedings, I could and would testify competently to these facts.

2.      I am a citizen of the United States and currently reside in Lakewood, Colorado and have personal knowledge of the matters contained in this declaration.

3.      I am submitting this declaration on behalf of myself and Defendant-Intervenor WildEarth Guardians ("Guardians"), a non-profit organization in good standing within the District of Columbia.

4.      I have been an active member of Guardians since 2019, as well as a staff member of Guardians, first as the Wildlife Program Director and now as Conservation Director, a role I've held since April 2024. I currently reside in the Denver Metro Area in Colorado, where I have lived since April 2019. Prior to that, I lived in Los Angeles, CA from 2007 through 2019. I have been an active member in good standing of the California bar since November 2007.

5.      Formed in 1989 as Forest Guardians, Guardians is a non-profit environmental organization dedicated to protecting and restoring the wildlife, wild places, rivers, and health of the American West. Guardians is incorporated in New Mexico and headquartered in Santa Fe, New Mexico, with additional offices in Denver, CO; Missoula, MT; Portland, OR; Seattle, WA; and Tucson, AZ. Guardians has approximately 206,000 members and supporters nationwide. Guardians and its members are concerned about protecting threatened and endangered species from extinction and extensively rely upon the Endangered Species Act ("ESA") to ensure imperiled species receive the protections they need to survive and recover. Guardians submitted comments on the proposed ESA regulatory revisions that were finalized in 2019 and 2024 and was part of the coalition that delivered nearly 1 million comments to the Services opposing these regulations.

6.      As Wildlife Program Director, a focus of my work at Guardians was obtaining ESA listing for imperiled species, designation of critical habitat, development and timely updates of recovery plans, and other vital protections for species under the ESA's authority. In my time at Guardians, I have contributed to our "Ending the War on Wildlife" campaign, aiming to stop the mass killing of apex predators including listed wolves and grizzlies on our public lands. I have specifically worked to advocate for the reintroduction of endangered gray wolves in

Colorado, securing critical habitat designations for Canada lynx, as well as advocating for ESA
listing for Joshua Trees.

7.      As Conservation Director, I now oversee litigation in our Wild Places and
Wildlife programs, in which we hold federal agencies accountable to their Section 7 consultation
responsibilities under the ESA. Ongoing Section 7 consultation challenges by Guardians are
occurring across the West, including a challenge to forest plan amendments in six Oregon and
Washington national forests that would change prohibitions on logging large trees, impacting
numerous listed species in these forests including chinook salmon, bull trout, and lost river
sucker. An additional lawsuit involves a challenge to a project in the Bitterroot National Forest in
Montana against the Forest Service for its failure to consult on the impacts of the project to the
threatened whitebark pine, a key food source for listed grizzly bears, particularly as they prepare
for hibernation. Because of this work, I keenly understand the importance of the ESA and the
ramifications of weakening Section 7 protections, should ESA regulations return in-part or in-
entirety to those adopted in 2019.

8.      As a member, I rely on Guardians to protect my interest in imperiled species. The
2019 rules under Section 7 significantly hinder Guardians' work, on behalf of its members. That
is, protecting ESA-listed species from the impacts of federal-government-supported projects
across the West. These 2019 Section 7 rules will beget further harms to listed species that
Guardians aims to protect by ignoring detrimental effects to listed species and their habitats.
These further harms to listed species that remain unconsidered under the 2019 rules, directly
diminishes Guardians' efforts to protect listed species within their ecosystems.

9.      The ESA regulations adopted in 2019 under Section 4 equally hinders Guardians'
work over the last two decades of securing ESA protections for imperiled flora and fauna,

securing critical habitat protections, as well as halting premature de-listing of species that have yet to recover. Guardians has ongoing litigation protecting species listed as threatened or endangered under the ESA.

10.    Reversion to the 2019 regulations, eliminating the blanket 4(d) rule, would require USFWS to develop species-specific 4(d) rules for all species listed as threatened. As a result, there will inevitably be even further delay on the part of the agency to issue timely decisions on proposed listing petitions. Guardians' interests will be negatively impacted by the 2019 regulations as USFWS fails to meet its obligation to even provide an estimated date and priority number for the many petitioned species, much less conduct the necessary review.  These species have been in regulatory limbo for the past 10+ years without a decision from the USFWS despite its legal obligation and promises to provide an update. Further delay by USFWS has and will continue to frustrate Guardians' efforts to achieve timely protections for these species, many of which Guardians and its members have longstanding interests in protecting.

11.    The removal of the blanket 4(d) rule will require Guardians to devote additional resources to preparing petitions for threatened species, as well as advocating for robust species-specific 4(d) rules after listings.  Prior to the elimination of the blanket 4(d) rule in 2019, Guardians spent its limited resources on advocating for many more imperiled species, not engaged in a battle with the Service to simply get some meaningful protection for a species even after proving that a particular species merited threatened listing.

12.    The Wolverine is a species that Guardians has fiercely advocated to protect, and with its listing as threatened in 2023, the Service declined to assign the full swathe of ESA protections, instead opting for an interim 4(d) rule that allows the 300 wolverines left in the lower 48 to be harmed by trapping. Had the blanket 4(d) rule been in place at that time, the

wolverine would likely be protected from these 4(d) exceptions, and Guardians limited resources less burdened in efforts to defend wolverine from this very real threat. This additional work will necessitate the commitment of substantial Guardians' time and resources that would not otherwise have been necessary, and will impair Guardians' ability to carry out its core mission to protect wildlife and wild places across the American West.

13.    Identifying critical habitat for endangered and threatened species is essential to effective species protections, as I have learned through my work. The science is clear that climate change is shifting entire ranges of suitable habitats for imperiled species. The 2019 rules arbitrarily obfuscate critical habitat designation for vital unoccupied habitat that will be essential climate refugia for species Guardians continues to protect. Guardians' campaign to list and protect Joshua trees comes to mind. The Service has identified critical climate refugia for the species that is currently unoccupied. Part of Guardians work to protect these yucca elders of the desert Southwest is to ensure that Joshua trees can pragmatically shift to very limited habitats in which all basic needs will remain, while up to 100% of their current range becomes unsuitable by the end of the century.  Reversion to the 2019 rule, will halt critical habitat designation tools essential to Guardians work of protecting imperiled species in a warming climate, as more and more become listed.

14.    Premature de-listings of species under the 2019 rules, without consideration of whether a species is recovering, will dramatically injure Guardians' conservation work, by stripping federal protections from species while they are still in need of such. Recovery is an essential goal of the ESA and Guardians work. As stated previously, Guardians devotes significant resources to listing and protecting ESA listed species. The delisting of a species

before recovery occurs would diminish and counteract all of our prior resources invested, leaving a species vulnerable to extinction once again, back to square one.

15.     One of the species that I have been working on for many years is the gray wolf. In addition to my professional interests in gray wolves, I have a strong personal affinity for wolves and desire to see their successful return to their historic range.

16.     In September 2020, I traveled to the Gila National Forest for the specific purpose of hoping to see or hear Mexican wolves ("lobos"). Camping in a remote location in the Gila on the first evening, shortly after nightfall we heard a chorus of wolf howls from all directions. While we could not see lobos—or much else in the darkness—we could hear what sounded like at least a dozen lobos quite close to our campsite. This howling lasted for approximately 20 minutes and ended as abruptly as it began. It was one of the most amazing experiences of my life and I feel truly lucky to have had the opportunity to hear these wolves.

17.     I intend to return to the Greater Gila Bioregion in the future in hopes of hearing lobos howl again. Due to the nature of my current work, I plan to travel to New Mexico at least once a year for the foreseeable future. Whenever I travel there for work, I always carve out additional time to go experience these species I care deeply about. Most recently at the beginning of June 2024, I traveled to Silver City, NM for the Gila Wilderness Centennial celebration. While there, I spoke to an individual with the U.S. Forest Service who showed me a picture of a lobo he had recently seen in the Gila and we discussed the species. That same trip, I drove into the Gila Wilderness Area to visit the Gila Cliff Dwellings National Monument and hiked in the area looking for signs of lobos. My colleague and I also went to an area known for its extensive bird population at dawn in hopes of seeing (or hearing) ESA-listed Southwestern willow

flycatchers and Mexican spotted owls. I will return to the Gila in 2025 to explore new areas of the bioregion and look for wolves and additional species.

18.    Additionally, I regularly hike—and sometimes camp—in national forests across my home state of Colorado, particularly during the months of May through September. In 2020, a ballot measure in Colorado provided that wolves would be reintroduced in Colorado starting at the end of 2023. This species has been functionally absent from the Colorado landscape for the past 80 years. After the reintroduction of 10 gray wolves in December 2023, Colorado Parks and Wildlife has observed collared wolves in Grand, Eagle, Summit, Routt, and Larimer counties in Colorado. These are all locations that I visit regularly for hiking and other recreation activities in and around the Arapahoe-Roosevelt, White River, and Medicine-Routt national forests. For example, in August 2024, I hiked near Vail, Colorado (in the White River National Forest) and floated on the Colorado River through Kremmling adjacent to the Routt National Forest. I hope that one day while adventuring in the wild places of my home state of Colorado, I will hear the howls of gray wolves, as a sign that our ecosystem is regenerating. When I recreate in these places, I now keep a keen eye out for gray wolves and the thought that I may one day be able to see one brings me great joy.

19.    Hiking and camping in the wild places of the West is something that I rely upon for rejuvenation of my mind, body, and spirit. Knowing that endangered species like the gray wolf, Canada lynx, and Mexican spotted owl are present in places I recreate, makes these places wild, and thus special to me. My experiences of joy, humility, and serenity arising from encounters with these species depend on proper implementation of the ESA and are significantly hindered if these new ESA regulations remain. As an example, the prospect for lobo recovery in New Mexico, will be meaningfully mired if Section 7 consultation reverts to its mortally

wounded 2019 state. Should these new regulations stand, the protections of the ESA will be fundamentally tarnished in a way that will hinder these species from being protected, successfully recovering, and inhabiting the wild corners of the West that I seek out and value.

20.    If the 2024 ESA regulations challenged by Plaintiffs remain in force, the potential harms to my interests in continuing to see, hear, and enjoy these species within their wild habitats would be redressed.


I hereby declare under penalty of perjury that the foregoing declaration is true and correct.

Dated this 14th day of April, 2025, in Lakewood, Colorado.

_____
Lindsay Larris