UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FARM BUREAU FEDERATION et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES FISH AND WILDLIFE SERVICE et al., <br><br> *Defendants*, <br><br> and <br><br> CENTER FOR BIOLOGICAL DIVERSITY et al., <br><br> *Defendant-Intervenor-Applicants.* | Case No. 1:25-cv-00947-SLS |

**DEFENDANT-INTERVENOR-APPLICANTS' REPLY
IN SUPPORT OF MOTION TO INTERVENE**

I.   **Introduction**

Three months ago, Center for Biological Diversity, WildEarth Guardians, Sierra Club, and Defenders of Wildlife ("Conservation Applicants") filed a motion to intervene as defendants in this case. *See* Mot. to Intervene, ECF No. 4 (April 15, 2025). Federal Defendants' opposition, Opp'n to Mot. to Intervene, ECF No. 24 (June 30, 2025), fails to present any reason to deny Conservation Applicants' motion.[1] Intervention should be granted.

Federal Defendants' argument barely addresses the four factors for intervention found in Federal Rule of Civil Procedure 24(a). Silent on three of the factors, Federal Defendants argue

---

[1] Plaintiffs American Farm Bureau Federation *et al.* did not file a response.

1

only that "[i]ntervention is not required to protect movants' interests in the 2024 ESA regulations," Opp'n, ECF No. 24 at 4, conceding that Conservation Applicants' motion is timely; they have cognizable interests at stake; and that no party adequately represents those interests. Instead, Federal Defendants argue only that Conservation Applicants are not "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a).[2] But the relief requested here — wholesale remand of the 2024 Endangered Species Act ("ESA") regulations *and* full reinstatement of the 2019 regulations—would undoubtedly impair Conservation Applicants' ongoing work to defend imperiled species and habitats and to ensure the lawful implementation of the statute.

Federal Defendants' position is that ongoing cases in other courts addressing *different* aspects of the 2019 and 2024 ESA regulations sufficiently protect Conservation Applicants' interests such that intervention is not warranted here. This makes no sense: the other cases raise different claims and involve different sets of parties. Here, Plaintiffs broadly seek vacatur of the aspects of the 2024 ESA regulations that advance Conservation Applicants' interests. Conservation Applicants cannot counter the threat that this case poses to their interests in any other forum.

Federal Defendants also assert that intervention as defendants would somehow violate the doctrine against claim splitting. *See* Opp'n, ECF No. 24 at 7. The claim-splitting doctrine is simply inapplicable: Conservation Applicants did not bring this case and are not asserting any claims. The three ongoing cases challenge different aspects of the regulations, seek different relief, and involve different sets of parties. *Cf. Katz v. Gerardi*, 655 F.3d 1212, 1218–19 (10th Cir. 2011) (cited at

---

[2] Federal Defendants also do not dispute that Movants have Article III standing to intervene.

2

Opp'n, ECF No. 24 at 8) (claim splitting bar applies if "the first suit, assuming it were final, would preclude the second suit").

Finally, Federal Defendants appear to concede that, so long as Conservation Applicants do not raise new claims or collateral issues, *see* Opp'n, ECF No. 24 at 11, permissive intervention would be appropriate. Conservation Applicants do not seek to interject new issues, and so permissive intervention is warranted as an alternative to intervention as of right.

II. Argument

    A. **Conservation Applicants Are Entitled to Intervene as of Right to Protect Their Interests.**

Of the four prerequisites for intervention as of right under Rule 24(a)(2), Federal Defendants effectively concede three and challenge only one: whether Conservation Applicants are "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a) (emphasis added). Conservation Applicants meet this burden.

Disposing of an action "may. . . impair or impede a proposed intervenor's interests when the disposition of the action would result in a substantial change in the status quo with respect to those interests." *Dist. of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) [hereinafter "PEPCO"]. In applying this requirement, courts examine the "practical consequences" of denying intervention. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003), *abrogation recognized by Institutional Shareholder Servs., Inc. v. Sec. & Exch. Comm'n*, No. 24-5105, 2025 WL 1802786 (D.D.C. July 1, 2025).

In this case, Plaintiffs ask the Court to vacate and remand all three of the 2024 ESA regulations in their entirety, enjoin the Services from using any of the 2024 ESA regulations, and reinstate the 2019 ESA regulations in their entirety. *See* Compl., ECF No. 1 at 26 (Request for

3

Relief). Plaintiffs' claims, if successful, would make the ESA's implementing regulations less protective of imperiled species by, for example, reducing the scope of effects considered during ESA section 7 consultation, increasing the barriers to designation of critical habitat needed by imperiled species, and weakening protections for threatened species. *See, e.g.*, Mem. ISO Mot. to Intervene, ECF No. 4-1 at 10–11; Senatore Decl., ECF No. 4-7 at ¶¶ 17–239; Greenwald Decl., ECF No. 4-8 at ¶ 26. If granted, this relief would undermine Conservation Applicants' work to protect imperiled species and habitats for the reasons described in their motion to intervene, *see* ECF No. 4-1 at 9  15, causing a change in the status quo "in a way that is hard to reverse." *PEPCO*, 826 F. Supp. 2d at 234; *see also Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 99 F.R.D. 607, 609 (D.D.C. 1983) (where proposed intervenors had spent years trying to demonstrate the safety of their pesticides to EPA, finding that if EPA were required to reconsider the safety of pesticides it had preliminarily decided to register, "intervenors' interests would be practically impaired because they would have to start over again demonstrating to EPA the safety of their pesticide products.").

Invalidating all three 2024 ESA regulations and reinstating the 2019 regulations also could disrupt ongoing litigation in the Northern and Eastern Districts of California and the District of Montana, which is in itself sufficient to show risk of impairment to interests. *See, e.g.*, *Me-Wuk Indian Cmty. of Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 319  20 (D.D.C. 2007) (finding impairment of interest where an unfavorable ruling could create bad precedent that "would likely" disadvantage proposed intervenor in ongoing litigation).

> **B.    Ongoing Litigation in Other Courts Will Not Adequately Protect All Four of Conservation Applicants' Interests.**

Federal Defendants maintain that Conservation Applicants' participation in other lawsuits concerning other ESA regulations adequately protects their interest. *See* Opp'n, ECF No. 24 at 4–

4

7 (other lawsuits seek relief "akin" to relief Plaintiffs seek here). This is wrong for two reasons. First, ongoing litigation is irrelevant to the question of whether a new case may impair an intervenor's interests. Second, the other lawsuits mentioned here are distinct, involving different claims, different relief, and different parties.

As an initial matter, the "may impair" standard is satisfied where a new case implicates an intervenor's interests, despite ongoing litigation. For example, in *Me-Wuk Indian Community of the Wilton Rancheria v. Kempthorne*, a D.C. district court found that, although the proposed intervenor had *already* filed a case in California seeking the same relief (federal recognition for an Indian tribe), intervention as of right was warranted. *See* 246 F.R.D. at 319–20. With respect to potential impairment of interests, the court found that, in the event of an unfavorable ruling, the proposed intervenor "would likely be disadvantaged in future efforts to restore federal Indian tribe recognition because . . . a decision here would receive great weight when the same or similar issues arise either before this District Court or those of California." *Id.* (internal quotation marks omitted). The court also found that denial of federal recognition would directly affect the putative intervenor "because of the immediate negative effect the decision would have on the group's efforts to restore the benefits of federal tribe recognition, efforts that have been ongoing for years." *Id.*

This case presents a strikingly similar situation. If the Court remands the 2024 ESA regulations in their entirety (especially if it does so with vacatur), the ruling will not only directly impair Conservation Applicants' work defending imperiled species and habitats but will also create negative precedent that could affect the outcome of ongoing litigation in other fora. *Accord Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (adverse judgment "could establish unfavorable precedent that would make it more difficult for [intervenor] to succeed on similar claims" in another future lawsuit, "which is sufficient to support intervention under our caselaw").

5

Federal Defendants' citations to the contrary are inapposite. In *B.H. v. McDonald*, cited at Opp'n, ECF No. 24 at 4, the proposed intervenors took issue not with the resolution of the case, but with the decision to hold closed in-chambers conferences; the court held that the intervenors had other avenues to seek public proceedings. *See* 49 F.3d 294, 295–97 (7th Cir. 1995). The court did not—as Federal Defendants claim—specify that the proposed intervenors had the option of "fil[ing] [a] separate suit seeking the same relief as that sought by plaintiffs." Opp'n, ECF No. 24 at 4. *District of Columbia v. Potomac Electric and Power Co.*, cited at Opp'n, ECF No. 24 at 5, is distinguishable as well. *See* 826 F. Supp. 2d 227 (D.D.C. 2011). There, the court found that denying intervention to several environmental groups, which wished to object to a consent decree, would not impede their interests because the consent decree itself did not resolve either PEPCO's liability or "the ultimate question of how the pollution [would] be cleaned up." *Id.* at 234–35. Here, in contrast, Plaintiffs' requested relief would invalidate a set of regulations on which Conservation Applicants rely in their organizational work, substantially changing the status quo.

Moreover, even if the other ongoing cases had any legal relevance, their scope is different, and they do not afford the intervenors the opportunity to oppose the relief sought in this lawsuit. In Conservation Applicants' affirmative cases (i.e., where they are plaintiffs), the regulations they challenge are different, and they seek completely different relief: reinstatement of the *pre-2019* regulations, as opposed to reinstatement of the *2019* regulations, which Plaintiffs request. The summary of the other lawsuits that follows demonstrates the differences in these cases.

First, on August 1, 2024, Center for Biological Diversity, Sierra Club, and WildEarth Guardians filed suit in the Northern District of California. There, they *challenge* discrete parts of the 2019 ESA regulations and 2024 ESA regulations (as opposed to defending portions of the 2024 ESA regulations, as Conservation Applicants would do here). Moreover, the challenged provisions

6

are entirely different from those addressed in the Complaint here unsurprisingly, there is no overlap between the provisions challenged by Conservation Applicants in another forum and those challenged by industry Plaintiffs here. *See* First Am. Compl. at at ¶ 8, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, No. 4:24-cv-04651-JST (N.D. Cal. Sept. 30, 2024), ECF No. 24-3. Finally, Conservation Applicant Defenders of Wildlife is not a party to *Center for Biological Diversity*.

Second, on January 6, 2025, Defenders of Wildlife filed suit in the Eastern District of California. *See* Compl., *Defenders of Wildlife v. U.S. Fish and Wildlife Service*, No. 2:25-cv-00045-DAD-CKD (E.D. Cal. Jan. 6, 2025), ECF No. 24-2. This case challenges the U.S. Fish and Wildlife Service's ("FWS") unlawful reliance on the "Not Prudent" regulation (a discrete portion of the 2019 and 2024 ESA regulations, 50 C.F.R. § 424.12(a)(1)) as the basis for its 2021 decision not to designate critical habitat for the endangered Sierra Nevada red fox. Defenders also asserts a facial challenge to the Not Prudent regulation. The suit requests, in relevant part, that the court vacate and remand the "Not Prudent Regulation, as reflected in the 2019 [ESA] Amendments and 2024 Amendments." *Id.* at 25–26. No other Conservation Applicants here are parties to *Defenders of Wildlife*, and Federal Defendants do not explain or support their apparent argument that it does not matter that not all Conservation Applicants are parties in the other cases. *See* Opp'n, ECF No. 24 at 5 n.1.

Third, on March 10, 2025, the Rocky Mountain Elk Foundation and the Property and Environment Research Center filed suit in the District of Montana to challenge FWS's 2024 Blanket 4(d) Rule, which allows the agency to apply certain ESA protections—including protections against "take"—by default when listing a species as threatened. There, the plaintiffs ask the court to vacate the rule and enjoin FWS from implementing it. *See* Compl., *Rocky Mountain*

7

*Elk Found. v. U.S. Dep't of the Interior*, No. 2:25-cv-0029-KLD (D. Mont. Mar. 10, 2025), ECF No. 1. Defenders of Wildlife and Center for Biological Diversity filed separate motions to intervene as defendants in that case, which the district court granted on June 16, 2025. *See* Opp'n to Mot. to Intervene, ECF No. 24-1. Conservation Applicants WildEarth Guardians and Sierra Club are not parties to *Rocky Mountain Elk Foundation*.

The only regulation at issue in both this case and an already-pending case is FWS's Blanket 4(d) Rule.[3] But the litigation in *Rocky Mountain Elk Foundation* will not adequately protect Conservation Applicants Defenders of Wildlife and Center for Biological Diversity's interests in even this limited respect; their participation in *Rocky Mountain Elk Foundation* would not protect their interests if *this Court* vacated the Blanket 4(d) rule. Moreover, Conservation Applicants WildEarth Guardians and Sierra Club are not intervenors in *Rocky Mountain Elk*.

Despite the considerable differences between this case and the others, Federal Defendants assert that no matter the outcome here the result cannot prejudice Conservation Applicants. *See* Opp'n, ECF No. 24 at 5–6. This is patently untrue. Reinstatement of the 2019 regulations—the precise outcome that Plaintiffs seek—would directly impair Conservation Applicants' work defending imperiled species and habitats and interest in the lawfulness of the ESA's implementing regulations. Rule 24(a) requires granting intervention when the resolution of a case "*may*" impair a proposed intervenor's rights as a "practical matter." Fed. R. Civ. P. 24(a)(2) (emphasis added).

---

[3] Federal Defendants' contention that future species-specific 4(d) rules will protect Conservation Applicants' interests is specious. *See* Opp'n, ECF No. 24 at 7. Conservation Applicants would not "benefit" from removing FWS's discretion to apply blanket, across-the-board statutory protections to threatened species where appropriate and instead requiring the agency to promulgate species-specific 4(d) rules for each threatened species. *See* Opp'n, ECF No. 24-1 at 4 (D. Mont. Order explaining that requiring Defenders of Wildlife and Center for Biological Diversity to "pursue species-specific protections for every species listed as threatened" would "delay[] and diminish[] their ability to obtain ESA protection for imperiled species").

That standard is clearly satisfied here, and the fact that not every possible outcome of this case would harm Plaintiffs is immaterial. Indeed, that is the reason Conservation Applicants seek to intervene—to advocate for an outcome that does *not* harm their interests and to oppose one that does. The fact that some Conservation Applicants are pursuing separate cases elsewhere to vindicate a different set of interests has no bearing on their right to defend their interests here.

### C.   The Doctrine Against Claim-Splitting Is Inapplicable.

Federal Defendants also assert that granting Conservation Applicants' motion to intervene would somehow allow inappropriate claim-splitting. *See* Opp'n, ECF No. 24 at 7–10. This is baseless. Conservation Applicants are putative defendant-intervenors and assert no claims. *See Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (claim-splitting prevents "two actions on the same subject in the same court, against the same defendant at the same time") (quoting *Katz v. Gerardi*, 655 F.3d at 1217).

In any event, the *other parties'* claims and relief at issue here are distinct from the claims and relief at issue in the other cases. The test for claim-splitting is "whether, assuming the first suit was already final, the second suit would be precluded." *Clayton v. Dist. of Columbia*, 36 F. Supp. 3d at 94. Cases involving different claims and relief cannot possibly satisfy that test, and thus the claim-splitting doctrine has no possible application here. Federal Defendants are wrong to suggest that Conservation Applicants have engaged in "gamesmanship" or "duplication" by moving to intervene as defendants in a new and distinct lawsuit that someone else filed. To the contrary, gamesmanship would result if different sets of plaintiffs could challenge Conservation Applicants' interests in multiple courts and Conservation Applicants could defend their interests in only one of those cases.

### D. In the Alternative, Permissive Intervention Is Warranted.

Permissive intervention is appropriate when an applicant's timely defense "shares a question of law or fact in common with the underlying action and if the intervention will not unduly delay or prejudice the rights of the original parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009) (citing Fed. R. Civ. P. 24(b)). Federal Defendants have contested neither this standard nor that Conservation Applicants satisfy it. *See* Opp'n, ECF No. 24 at 10–11. Rather, they request that the Court require Conservation Applicants to limit their arguments to "the existing claims in the action and refrain from raising new claims or collateral issues." Opp'n, ECF No. 24 at 11 (citing *Farmer v. U.S. Envtl. Prot. Agency*, 759 F. Supp. 3d 101, 111 (D.D.C. 2024)). Conservation Applicants do not seek to raise new or different claims in this case, and permissive intervention is warranted.

### III. Conclusion

For the reasons set forth above, Center for Biological Diversity, WildEarth Guardians, Sierra Club, and Defenders of Wildlife request that the Court grant them intervention as defendants as of right or, in the alternative, permissive intervention.

Respectfully submitted this 14th day of July, 2025,

/s/ Deirdre Dlugoleski
Deirdre Dlugoleski (admitted *pro hac vice*)
Ellen Medlin Richmond (admitted *pro hac vice*)
Defenders of Wildlife
600 17th St., Suite 450 N
Denver, CO 80202
720.943.4284
erichmond@defenders.org
ddlugoleski@defenders.org

*Counsel for Defendant-Intervenor-Applicant Defenders of Wildlife*

/s/ Benjamin M. Levitan
Benjamin M. Levitan (DC Bar #NY0253)
Earthjustice
48 Wall Street, Floor 15
New York, NY 10005
T: (202) 797-4317
blevitan@earthjustice.org

Andrea A. Treece (admitted *pro hac vice*)
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
T: (415) 217-2000
atreece@earthjustice.org

Kristen L. Boyles (DC Bar #WA0004)
Earthjustice
810 Third Ave., Suite 610
Seattle, WA 98104
T: (206) 343-7340
kboyles@earthjustice.org

*Counsel for Defendant-Intervenor-Applicants Center for Biological Diversity, Defenders of Wildlife, Sierra Club, and WildEarth Guardians*

/s/ Lia Comerford
Lia Comerford (admitted *pro hac vice*)
Ryan Adair Shannon (DC Bar #OR0007)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
T: (971) 717-6420 (Comerford)
T: (971) 717-6407 (Shannon)
lcomerford@biologicaldiversity.org
rshannon@biologicaldiversity.org

*Counsel for Defendant-Intervenor-Applicant Center for Biological Diversity*