## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN FARM BUREAU
FEDERATION, *et al.*,

        *Plaintiffs*,

    v.

UNITED STATES FISH AND WILDLIFE
SERVICE, *et al.*,

        *Defendants*.

Civil Action No. 25-947 (SLS)

Judge Sparkle L. Sooknanan

## <u>MEMORANDUM OPINION</u>

This case challenges the validity of several 2024 regulations promulgated by the U.S. Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS) under the Endangered Species Act of 1973, 16 U.S.C. § 1531 *et seq.* (ESA). Specifically, the Plaintiffs challenge: (1) regulations concerning the listing, reclassifying, and delisting of endangered species and critical habitats under Section 4 of the ESA, (2) regulations governing interagency consultations on the effects of agency actions on ESA-listed species and their critical habitats under Section 7 of the ESA, and (3) regulations reinstating Section 4(d) blanket protections and prohibitions for threatened species. Four environmental organizations—Center for Biological Diversity, WildEarth Guardians, Sierra Club, and Defenders of Wildlife (the Movants)—now seek to intervene as defendants, arguing that the existing Defendants (FWS, NMFS, and various federal officials) do not adequately represent their interests. For the reasons below, the Court grants intervention as of right.

# I.    BACKGROUND

## A.    Regulatory Background and Prior Litigation

Congress enacted the ESA to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate" to conform with international conservation obligations. 16 U.S.C. § 1531(b). Since the statute's inception, FWS and NMFS (the Services) have promulgated regulations implementing Sections 4 and 7. *See, e.g.*, Listing Endangered and Threatened Species and Designating Critical Habitat, 49 Fed. Reg. 38900 (Oct. 1, 1984); Interagency Cooperation— Endangered Species Act of 1973, 51 Fed. Reg. 19926 (June 3, 1986).

In 2019, the Services revised the regulations implementing Sections 4 and 7 as part of broader "deregulatory" efforts. *See* Regulations for Prohibitions to Threatened Wildlife and Plants, 84 Fed. Reg. 44753, 44758 (Aug. 27, 2019); Regulations for Interagency Cooperation, 84 Fed. Reg. 44976, 45014 (Aug. 27, 2019); Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45020, 45050 (Aug. 27, 2019). After their adoption, the Movants challenged the 2019 Regulations in the Northern District of California. *See Ctr. for Biological Diversity v. Bernhardt*, No. 19-cv-5206 (N.D. Cal. Aug. 21, 2019); *California v. Bernhardt*, No. 19-cv-6013 (N.D. Cal. Sept. 25, 2019); *Animal Legal Def. Fund v. Bernhardt*, No. 19-cv-6812 (N.D. Cal. Oct. 21, 2019). And after a change in Presidential Administration, the Services obtained a voluntary remand without vacatur in those actions. *See, e.g.*, Am. Order Granting Mot. Remand, *Ctr. For Biological Diversity v. Haaland*, No. 19-cv-5206 (N.D. Cal. Nov. 16, 2022), ECF No. 198.

Following remand, the Services announced proposed rules to revise the 2019 Regulations.[1]
The Services later adopted final regulations implementing those revisions, which are the 2024
Regulations at issue in this action. *See* Listing Endangered and Threatened Species and
Designating Critical Habitat, 89 Fed. Reg. 24300 (Apr. 5, 2024); Regulations for Interagency
Cooperation, 89 Fed. Reg. 24268 (Apr. 5, 2024); Regulations Pertaining to Endangered and
Threatened Wildlife and Plants, 89 Fed. Reg. 23919 (Apr. 5, 2024). The Movants support some of
these revisions—which reinstated parts of the pre-2019 regulatory regime. *See* Mem. Supp. Mot.
Intervene ("Mem."), ECF No. 4-1, at 5. And they resumed litigation across the country to
challenge those aspects of the 2024 Regulations they continue to oppose. *See Defs. of Wildlife v.*
*FWS*, No. 25-cv-45 (E.D. Cal. 2025) (Defenders of Wildlife); *Ctr. for Biological Diversity v. U.S.*
*Dep't of the Interior*, No. 24-cv-4651 (N.D. Cal. 2024) (Center for Biological Diversity, Sierra
Club, and WildEarth Guardians).

    The Plaintiffs filed this case on March 31, 2025, to challenge the validity of the 2024
Regulations under the Administrative Procedure Act (APA). Compl. ¶ 1, ECF No.1. The Plaintiffs
ask this Court: (1) to declare the 2024 Regulations invalid, (2) to enjoin the implementation of the
2024 Regulations, (3) to remand the 2024 Regulations, and (4) to reinstate the 2019 Regulations
that preceded them. Compl. at 26. The Movants filed the instant Motion to Intervene soon after on
April 15, 2025. *See* Mot. Intervene (Mot.), ECF No. 4.

    **B.**    **The Proposed Defendant-Intervenors**

    Four environmental organizations have moved to intervene as Defendants in this action.
The Center for Biological Diversity is a non-profit environmental organization with more than

---

[1] *See, e.g.*, Revision of Regulations for Interagency Cooperation, 88 Fed. Reg. 40753 (June 22, 2023); Listing Endangered and Threatened Species and Designating Critical Habitat, 88 Fed. Reg. 40764 (June 22, 2023).

93,000 members dedicated to the protection of native species and their habitats through science, policy, and environmental law. Decl. of David Noah Greenwald ¶ 3, ECF No. 4-8. It submitted its own comments and was part of a coalition that submitted over 800,000 public comments to the Services in relation to the 2019 and 2024 Regulations, *id.* ¶ 16, and it is involved in substantial litigation nationwide regarding the 2019 and 2024 Regulations, *see supra* I.A.

WildEarth Guardians is a non-profit environmental organization with approximately 206,000 members and supporters dedicated to protecting and restoring the wildlife, wild places, rivers, and health of the American West. Decl. of Lindsay Larris ¶ 5, ECF No. 4-6. WildEarth Guardians submitted its own comments and was part of a coalition that submitted over one million public comments to the Services regarding the 2019 and 2024 Regulations, *id.*, and it is involved in substantial litigation nationwide regarding the 2019 and 2024 Regulations, *see supra* I.A.

Sierra Club is an environmental organization with approximately 624,965 members dedicated to exploring, enjoying, and protecting the wild places of the earth; practicing and promoting the responsible use of the earth's ecosystems and resources; and educating and enlisting humanity to protect and restore the quality of the natural and human environment. Decl. of William Arthur ¶¶ 3–4, ECF No. 4-9. As part of its mission, Sierra Club is actively involved in protecting the public old growth forests and threatened or endangered species—including northern spotted owls, marbled murrelets, and native Northwest salmon and steelhead. *Id.* ¶ 5. Sierra Club staff organized an online webinar to educate volunteers on the 2019 regulation changes, and Sierra Club members have submitted comments on both the 2019 and 2024 Regulations. Decl. of Daniel Ritzman ¶ 38, ECF No. 4-4. Sierra Club is also involved in substantial litigation nationwide regarding the 2019 and 2024 Regulations. *See supra* I.A.

Finally, Defenders of Wildlife is a nonprofit membership organization that is dedicated to the protection of native wildlife and plants in their natural communities and works to protect and strengthen environmental laws and regulations that provide a basis for such wildlife conservation. Decl. of Michael Senatore ¶ 5, ECF No. 4-7. As part of its mission, it frequently petitions and/or advocates for listing of imperiled species as threatened or endangered and designation of critical habitat under ESA Section 4 and its associated regulations. *Id.* ¶¶ 8, 37. Furthermore, Defenders for Wildlife frequently comments on critical habitat proposals that could be analyzed by the Services under ESA Section 7 associated regulations. *Id.* ¶¶ 9, 33. For instance, it commented on critical habitat proposals for the Florida manatee and Canada lynx. *Id.* ¶ 37. And it is engaged in ongoing litigation to secure the ESA-listing of the pinyon jay bird species. *Id.* Defenders for Wildlife has engaged in congressional hearings and administrative proceedings regarding the ESA. *Id.* ¶¶ 6, 32. Its staff prepared various comment letters related to the 2019 and 2024 Regulations. *Id.* ¶¶ 10–12. It is also currently engaged in litigation challenging some of the 2024 regulations interpreting and implementing Section 4 of the ESA. *See Defs. of Wildlife v. FWS*, No. 25-cv-45 (E.D. Cal. 2025).

## II.    DISCUSSION

The Movants seek to intervene as Defendants under Rule 24 of the Federal Rules of Civil Procedure. They argue that they satisfy the standards for intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b). The Court agrees that they may intervene as of right under Rule 24(a). Thus, it need not address the alternative request for permissive intervention.

### A.    Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right. That provision requires the Court "[o]n timely motion" to "permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated

that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To satisfy this standard, putative intervenors must demonstrate that they (1) "submitted a timely application to intervene," (2) "have an interest relating to the property or transaction which is the subject of the action," (3) are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest," and (4) "have an interest that the existing parties would not adequately represent." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009) (alteration in original). The Movants satisfy these four factors.

### 1.    Timeliness

To determine whether this motion is timely, the Court considers the "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. British Am. Tobacco Austl. Serv. Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Here, the Motion to Intervene was brought two weeks after the Complaint was filed, which is well within the time period that courts in this District consider timely under Rule 24(a). *See, e.g.*, *Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 38, 46 (D.D.C. 2007) (granting motion to intervene filed more than 90 days after the complaint); *Safari Club Int'l v. Salazar*, 281 F.R.D. 32, 35, 36 n.6, 43 (D.D.C. 2012) (granting motion to intervene filed more than 60 days after the complaint). At this early stage, before the Court has adopted a briefing schedule, intervention is unlikely to prejudice the existing parties or lead to delays. Considering the Movants' purpose and need for intervention in light of their interest in preserving endangered species, *see infra* II.A.2–3, the promptly filed Motion is undoubtedly "timely" for purposes of Rule 24(a).

### 2.    Interests in this Action

The Movants have also made a sufficient showing of Article III standing, and a finding of "constitutional standing is alone sufficient to establish that the [proposed intervenors have] 'an interest relating to the property or transaction which is the subject of the action.'" *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)(2)), *abrogated on other grounds by Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025). The Movants assert associational standing, so they must demonstrate that: "(1) at least one . . . member[] has standing to sue in her or his own right, (2) the interests [they] seek[] to protect are germane to [their] purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Institutional S'holder Servs.*, 142 F.4th at 764 (citation and quotation marks omitted).

Here, the Movants and their members "adequately allege injury in fact" in this "environmental" suit because "they use the affected" critical habitats and their professional, "aesthetic and recreational" interests in endangered species within these habitats "will be lessened" by insufficient preservation under the ESA.[2] *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*,

---

[2] *See, e.g.*, Decl. of Elizabeth H. Fleming ¶ 13, ECF No. 4-5 ("In June 2022, Defenders, Save the Manatee Club, and Center for Biological Diversity secured a favorable settlement under which the Service agreed to issue a proposed regulation under the Endangered Species Act ('ESA') to revise outdated critical habitat designations for the Florida manatee by September 24, 2024."); Senatore Decl. ¶ 31 ("If Plaintiffs are successful in this lawsuit, FWS will likely be unable to finalize its rule listing the Florida manatee as a threatened species covered by the blanket 4(d) rule without undertaking a separate rulemaking[.]"); *id.* ¶ 7 ("Our members include scientists who have dedicated their professional careers to species conservation; recreationists who travel across the country to view and photograph wildlife; animal-lovers who hope to save these species from extinction; and practitioners of a variety of faiths who find spiritual significance in wilderness and wildlife."); Arthur Decl. ¶ 19 ("I am concerned that the 2019 ESA regulations threaten my interest in protected salmon and steelhead, including my ability to fish, restore my spirit in irreplaceable environments, share these experiences with others, and continue my regular trips to observe ESA-listed species."); Larris Decl. ¶¶ 6–20 (describing interests in use and enjoyment of the grey wolf, Canada lynx, and Mexican spotted owl).

528 U.S. 167, 183 (2000) (quoting, in part, *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Indeed, "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing" and actionable when that interest is "directly affected" by the suit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992) (citations and quotation marks omitted). And the Movants' interest in preserving endangered species is directly impacted by the Plaintiffs' challenge to the listing, consultation, and other processes used to preserve these very species. *See Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1371 (D.C. Cir. 2007) (an organization has standing when its members "use or live in areas affected" "and are persons for whom the aesthetic and recreational values of the area [would be] lessened by" the challenge (cleaned up)).

As to the other requirements, this action is clearly germane to the Movants' purposes and missions as environmental conservation organizations.[3] And their individual members' participation is not necessary to defend the challenged regulations. Accordingly, the Movants have demonstrated an interest at stake sufficient to satisfy both Article III and Rule 24(a). *See Fund for Animals*, 322 F.3d at 735.

---

[3] *See, e.g.*, Senatore Decl. ¶ 5 ("Defenders' primary mission is to further the protection of native wildlife and plants in their communities."); Greenwald Decl. ¶ 4 ("The Center's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through creative media, science, policy, and the law."); Larris Decl. ¶ 5 ("Guardians is a non-profit environmental organization dedicated to protecting and restoring the wildlife, wild places, rivers, and health of the American West."); Arthur Decl. ¶ 4 ("The Sierra Club is committed to maintaining the world's remaining natural ecosystems and to restoring and rehabilitating degraded ecosystems.").

### 3.    Impairment of Interests

The Parties dispute whether the Movants' interests may be impaired or impeded in this action. The Federal Defendants aver that the Movants' interests would be unimpeded by this suit because the Movants "are already pursuing litigation in other forums to meet th[eir] objective." Opp'n Mot. Intervene (Opp'n), ECF No. 24, at 4. Meanwhile, the Movants argue the contrary— contending the existing parties' "arguments and relief" in this case "might undermine" their ongoing litigation elsewhere. Mem. at 10. In light of Rule 23(a)'s requirement to consider "the 'practical consequences' of denying intervention," *Fund for Animals*, 322 F.3d at 735 (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)), the Court agrees with the Movants that, despite the ongoing litigation "in a different proceeding," they "could nevertheless be harmed by an unfavorable ruling" in this case. *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (characterizing *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)).

It is true that both the Plaintiffs' suit here and the Movants' actions elsewhere challenge some of the 2024 Regulations. But the Plaintiffs seek a remand of the 2024 Regulations and reinstatement of the preceding 2019 Regulations. Compl. at 26. Meanwhile, the Movants' actions in other jurisdictions challenge both the 2019 and 2024 Regulations, requesting a return to the pre-2019 status quo. Opp'n Ex. 2, ECF No. 24-2, at 25–26; Opp'n Ex. 3, ECF No. 24-3, at 36. Thus, the practical effect of a successful challenge by the Plaintiffs would be the precise result the Movants seek to prevent—namely, reinstatement of the 2019 Regulations that the Movants have long maintained are unlawful and undermine their interests. *See District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) (intervention is favored when

"disposition of the action would result in a substantial change in the status quo with respect to [the movants'] interests").

Furthermore, no Movant has brought a challenge to the Section 4(d) "blanket" protections challenged here because the Movants support that 2024 regulation. *See* Mem. at 5. Indeed, at least two Movants are defendant-intervenors in ongoing litigation elsewhere to defend the validity of this rule. *See Rocky Mountain Elk Found. v. U.S. Dep't of the Interior*, No. 25-cv-29, ECF No. 24 (D. Mont. June 16, 2025). And a successful ruling for the Plaintiffs vacating that Rule would undermine the Movants' interests in that regulation and its protections. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (that an adverse judgment "could establish unfavorable precedent that would make it more difficult for [intervenor] to succeed on similar claims" is "sufficient to support intervention under our caselaw").

At bottom, Rule 24(a) "allow[s] intervention by those who might be practically disadvantaged by the disposition of the action." Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. § 1908.2 (3d ed. 2025). And here, it is evident that "disposing of the action may as a practical matter impair or impede the[se] [M]ovant[s'] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2).

### 4.    Adequate Representation

Finally, the existing Parties in this case do not adequately represent the Movants' interests. A party seeking to intervene as of right must only demonstrate that existing representation "may" be inadequate in the action, Fed. R. Civ. P. 24(a)(2)—an inquiry that is "not onerous" and involves a "minimal" showing. *Fund for Animals*, 322 F.3d at 735 (quotations omitted). This minimal burden is easily satisfied given that the Federal Defendants and the Movants disagree on the scope of protection mandated by the ESA, as evidenced by the long history of litigation between these

parties. *See id.* at 736 (courts "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors" (collecting cases)); Min. Order, *Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, No. 25-cv-39 (D.D.C. Feb. 10, 2025) (finding that Federal defendants "may not adequately represent [the Center's and other conservation groups'] interests given the history of litigation between Defendants and the Conservation Groups over these agency actions" under Section 7 of the ESA).

In sum, the Movants have made the requisite showing that they are entitled to intervene in this action as a matter of right under Rule 24(a)(2). Accordingly, the Court need not address their request for permissive intervention under Rule 24(b).

### B.    Claim Splitting

The Federal Defendants next contend that the doctrine against claim splitting precludes intervention. Opp'n at 7–10. Claim splitting occurs when "the plaintiff seeks 'to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). But the Movants are putative defendant-intervenors, who assert no claims, counter-claims, or cross-claims and only seek to defend the 2024 Regulations in this action. And the test for claim splitting is "whether, assuming the first suit was already final, the second suit would be precluded." *Id.* (quoting *Katz*, 655 F.3d at 1219). Undoubtedly, any result in the related litigation would not preclude the Movants from mounting a legal defense here. So, claim splitting poses no obstacle to the intervention in this case.

### III.    CONCLUSION

For the foregoing reasons, the Court grants the Movants' Motion to Intervene, ECF No. 4.

A separate order will issue.

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:    September 5, 2025